UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| VICTOR HUGO BOTELLO, | No. 2:18-cv-162-TLN-EFB P |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| S. HANLON, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding with counsel in this action brought pursuant to 42 U.S.C. § 1983. Defendant Hanlon moves for summary adjudication, arguing that he is immune from suit on plaintiff's state-law negligence claim.[1] ECF No. 34. For the reasons that follow, the motion for summary judgment should be granted.

**I.    Background**

This action proceeds on plaintiff's first amended complaint, ECF No. 15, which alleges alleges as follows: On January 18, 2017, Hanlon, a correctional officer at California State Prison, Solano ("CSP-Solano"), issued plaintiff a Rules Violation Report ("RVR") for possession of an inmate-manufactured weapon, a cell phone, and weapon stock. *Id.* at 2. Hanlon's RVR included a fabrication that plaintiff had made an admission implicating himself and another inmate. *Id.*

---

[1] Defendant Jimenez is not a party to this motion, and the motion concerns only the negligence claim against defendant Hanlon.

1

This fabrication implied that plaintiff was a "jailhouse rat" and resulted in plaintiff being labeled as such. *Id.* at 4. Other inmates then tried to kill plaintiff on January 29, 2017, by stabbing him nine times on his back and neck. *Id.* Plaintiff's lung collapsed and the right side of his face became permanently paralyzed. *Id.*

Plaintiff sues Hanlon for state-law negligence, along with an Eighth Amendment claim not implicated by the instant motion. *Id.* at 4-5. Hanlon argues that he is immune from the state-law claim by operation of California Government Code § 821.6. The dispute is purely legal – the parties disagree on whether the statute provides immunity from malicious prosecution claims only or from a broader class of claims arising from an investigation related to a judicial or administrative proceeding.

**II.     The Motion for Summary Judgment**

    **A. <u>Summary Judgment Standards</u>**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails

in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

/////

/////

4

## B. Analysis

As noted above, the instant motion turns on a purely legal question, and the facts presented by the parties are not materially disputed. *Compare* ECF No. 34-2 *with* ECF No. 36-1. That legal question concerns the scope of California Government Code § 821.6 – namely, whether that statute immunizes state officials from all California-law claims against them for conduct connected with a judicial or administrative proceeding (other than false imprisonment claims), immunizes officials for conduct that could be challenged in a malicious prosecution claim, or immunizes officials only from claims specifically labeled malicious prosecution.

Government Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." When interpreting this statute, the court is bound by decisions of California's highest court. *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991). As an additional wrinkle, and the source of the dispute in this case, this court is also bound to follow the first U.S. Court of Appeals for the Ninth Circuit panel opinion interpreting how California's highest court views § 821.6 (absent an intervening change in California law, *en banc* opinion of the court, or intervening Supreme Court decision, none present here). *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001); *Owen v. United States*, 713 F.2d 1461, 1464-65 (9th Cir. 1983). As shown below, the California courts and the federal courts – including different panels of the Ninth Circuit – have divergent views of the statute and the interpretation of the statute by the state's high court.

The court begins its analysis with a 1974 California Supreme Court case. *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710 (1974). There, the plaintiff had been erroneously retained in custody at a county jail for 13 days past the expiration of his sentence. *Id.* at 714. He sued for false imprisonment, and the county argued that its sheriff was immune from the claim under § 821.6. *Id.* at 719. The court rejected that argument for two reasons. First, the plain text of § 821.6 uses the terms "institute" and "prosecute," and both terms mean to initiate proceedings. *Id.* The court concluded that retention of an individual past his release date did not fall within those plain meanings. *Id.* Second, "the history of section 821.6 demonstrates that the Legislature

5

intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*." *Id.* at 719-20 (emphasis in original). Accordingly, the court interpreted § 821.6 "narrowly," "confining its reach to malicious prosecution actions[.]" *Id.* at 721. Importantly, the court defined malicious prosecution as "initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause . . . . The test is whether the defendant was actively instrumental in causing the prosecution." *Id.* at 720. Malicious prosecution actions against public employees discussed by the state legislature in enacting § 821.6 all involved the "filing or swearing out affidavits of criminal activity against the plaintiff."

Since *Sullivan*, California appellate courts have construed § 821.6 to provide immunity not just from claims labeled "malicious prosecution," but from any claim arising out of actions taken in preparation for instituting or prosecuting a judicial or administrative action. *E.g.*, *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1047-49 (2007). These cases can be interpreted as focused on the conduct on which the claim is premised rather than the label – if the claim concerns conduct undertaken as part of an investigation leading up to a proceeding, § 821.6 applies. If the claim concerns conduct unrelated to an investigation leading up to a proceeding, it does not. Such a conduct-based approach is indicated by *Sullivan* itself, which noted that "malicious prosecution" covers conduct in initiating or procuring the prosecution of another (e.g., conduct in an investigation that causes a prosecution). In fact, at least one state appellate court specifically rejected an interpretation of *Sullivan* to limit immunity to claims labeled "malicious prosecution." *Jenkins v. Cnty. of Orange*, 212 Cal. App. 3d 278, 284 (1989) (finding public employee immune from negligence claim that arose from the employee's conduct in investigating child abuse).

The Ninth Circuit relied on this line of state appellate decisions in 2007, when it stated that, while § 821.6's "principal function is to provide relief from malicious prosecution" claims, it also "extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (citing *Kayfetz v. California*, 156 Cal. App. 3d 491 (1984) and *Amylou R. v. Cnty. Of*

*Riverside*, 28 Cal. App. 4th 1205 (1994)). *Blankenhorn* is consistent with the conduct-based approach to § 821.6 immunity followed by the state appellate courts and indicated by *Sullivan*.

Despite the state appellate courts' and *Blankenhorn*'s construction of § 821.6, a different Ninth Circuit panel decided in 2016 that *Sullivan* had construed the statute to be strictly limited to malicious prosecution claims. *Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846-47 (9th Cir. 2016). In *Garmon*, local officials had fraudulently procured an alibi witness's medical records and then used the records to impeach her testimony. The panel recognized that California appellate courts had interpreted § 821.6 more expansively than being strictly limited to malicious prosecution claims. *Id.* at 846-47. Nevertheless, it concluded that *Sullivan* had interpreted the statute to provide immunity solely from malicious prosecution claims. *Id.* The court did not mention *Blankenhorn*, nor did it analyze the state court interpretations of § 821.6 and *Sullivan*. And, notably, the plaintiff in *Garmon* had not been subjected to any prosecution or administrative proceeding – her medical records had been procured in connection with a trial in which she was merely a witness, and thus she could not have pursued a malicious prosecution claim against the offending officials.

Since *Garmon*, many decisions by the Ninth Circuit and its lower courts have quickly rejected claims of § 821.6 immunity where the plaintiff sued on a theory named something other than "malicious prosecution." *Advanced Bldg. & Fabrication, Inc. v. Cal. Highway Patrol*, 756 F. App'x 776, 777 (9th Cir. 2019); *Mendez v. Cnty. of L.A.*, 897 F.3d 1067, 1083 (9th Cir. 2018); *Sharp v. Cnty. of Orange*, 871 F.3d 901, 920-21 (9th Cir. 2017); *Young v. City of Menifee*, No. EDCV 17-1630 JGB (SPx), 2019 U.S. Dist. LEXIS 143231, at *24-26 (C.D. Cal. Apr. 5, 2019). These dispositions of proffered § 821.6 immunity defenses have a troubling flaw – a plaintiff can easily re-label conduct that fits the definitions of "malicious prosecution" provided by the *Sullivan* court as negligence, fraud, etc. If courts do not look beyond the label to the underlying conduct, § 821.6 can be made meaningless by such re-labeling. This problem is obviated when courts follow a conduct-based approach and assess the immunity question by comparing the

/////

/////

7

alleged conduct to the definitions of malicious prosecution provided in *Sullivan*. In *Colonies Partners LP v. County of San Bernardino,* one district court provided a thoughtful exposition of this approach:

> Plaintiff argues that *Garmon v. County of Los Angeles*, 828 F. 3d 837 (9th Cir. 2016) significantly limited the scope of § 821.6, essentially narrowing it to grant absolute immunity only for malicious prosecution actions. But plaintiff's reading of *Garmon* is overbroad. In *Garmon*, an alibi witness in a criminal prosecution brought a § 1983 action against a county deputy district attorney for issuing a subpoena for her medical records which mistakenly identified her the victim of the crime, resulted in the disclosure of her complete and unredacted medical records, later used to discredit her at trial. *Garmon*, 828 F.3d 840-42. The Ninth Circuit, relying on *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710, 117 Cal. Rptr. 241, 527 P.2d 865 (1974), held that the deputy district attorney's conduct was not shielded by § 821.6 and found that *Sullivan* confined the reach of § 821.6 to malicious prosecution claims, despite California Court of Appeal decisions subsequent to *Sullivan* which had expanded the statute's reach to immunize other conduct. The Court finds that *Garmon* limits § 821.6 immunity to claims arising from malicious prosecution. *Garmon*, 828 F.3d 837. However, in order to determine whether § 821.6 immunity applies, it must look to the conduct from which the claim arises, not merely the cause of action under which the claim is pled. Under *Sullivan*, that immune conduct "consists of initiating or procuring the arrest and prosecution of another under lawful process but from malicious motives and without probable cause." *Sullivan*, 12 Cal. 3d 720.
>
> While the Court is aware that other district courts have reached different conclusions, the Court finds this approach is more consistent with *Sullivan* and the Ninth Circuit's prior interpretation of § 821.6 than Defendant's suggested approach of limiting § 821.6 liability to claims specifically labeled malicious prosecution. In finding that Los Angeles County was not immune from a false imprisonment claim, the *Sullivan* court looked beyond the label under which the plaintiff had pled his claim and differentiated the relevant conduct for which defendants could be found liable for false imprisonment and malicious prosecution. *Sullivan*, 12 Cal. 3d at 719-20. The *Sullivan* court also considered the legislative history of the statute and highlighted the Senate Committee's comment that "California courts have repeatedly held . . . public employees immune from liability for this sort of *conduct*." *Sullivan*, 12 Cal. 3d at 719 (emphasis added).

*Colonies Partners LP v. Cnty. of San Bernardino*, 2018 U.S. Dist. LEXIS 225098, at *35-37.

For that reason, the court finds that the most harmonious reading of *Sullivan*, *Blankenhorn*, and *Garmon* is to follow a conduct-based approach to § 821.6 immunity. Under such an approach, the court looks to the conduct challenged by the plaintiff. If the conduct is within § 821.6's plain terms or the definitions of malicious prosecution provided by *Sullivan*, immunity applies. This approach also honors this court's obligation to follow the earliest Ninth Circuit panel opinion on the subject (*Blankenhorn*). Here, plaintiff alleges that defendant placed

8

falsehoods in the RVR, either maliciously or negligently, that caused plaintiff to be labeled as a snitch. In the California prison system, an RVR initiates an administrative adjudication of an inmate's alleged violation of prison rules. As such, defendant Hanlon was a public employee initiating an adjudication within the scope of his employment. His alleged conduct falls squarely within the purview of § 821.6 and the malicious prosecution definitions provided by *Sullivan*, whether plaintiff wishes to characterize the liability under a negligence theory or malicious prosecution theory. Accordingly, summary judgment on the negligence claim against defendant Hanlon must be granted in Hanlon's favor.

### III. Recommendation

In accordance with the above, it is HEREBY RECOMMENDED that defendant Hanlon's October 11, 2019 motion for summary judgment of plaintiff's state-law negligence claim (ECF No. 34) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 26, 2020.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE